UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.                                                            CASE NO: 2:18-cr-68-FtM-38MRM

JUAN CARLOS ALFARO GARCIA

## **OPINION AND ORDER**[1]

Before the Court is Defendant Juan Carlos Alfaro Garcia's Motion to Dismiss the Indictment Pursuant to 8 U.S.C. § 1326(d) and Request for Evidentiary Hearing filed on December 14, 2018. (Doc. 48). The United States filed a Response to Defendant's Motion to Dismiss the Indictment and Memorandum of Law on December 28, 2018.[2] (Doc. 52). For the following reasons, Defendant's motion (Doc. 48) is denied.

## **BACKGROUND**

Garcia, a citizen of Mexico, entered the United States illegally at the age of fifteen in July of 1996. (Doc. 48-1 at 2, 14). On October 31, 2007, Garcia was arrested for battery on a law enforcement officer or firefighter, resisting an officer, and driving with a suspended license. (*Id.* at 113-121). This incident gave rise to removal proceedings

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

[2] The Court notes Defendant attempted to file a Reply, but because he failed to seek this Court's leave prior to filing, the Court struck it from the record due to his non-compliance with M.D. Loc. R. 3.01(c). (Docs. 53; 54).

against Garcia. Crucial here, on March 4, 2008, the United States Department of Homeland Security ("Homeland Security") issued a Notice to Appear ("NTA") initiating removal proceedings against Garcia under the Immigration and Nationality Act ("INA"). (Docs. 48-8; 52-1). The NTA alleged that Garcia was subject to removal and ordered him to appear before an immigration judge. (Doc. 48-8 at 1). However, in the blanks provided for a location, date, and time of his hearing, the supervisory special agent simply wrote at a location "to be set" and on "a date to be set" and at "a time to be set." (*Id.*). That same day, an immigration officer read a Notice of Rights and Request for Disposition form in both English and Spanish to Defendant. (Doc. 52-3). The record shows Garcia elected to admit his illegal status and waive his right to a hearing before an immigration court and signed and dated both translations of the form. (*Id.*). Garcia also elected not to request a redetermination of his detention status by an immigration judge. (Doc. 52-2).

On May 6, 2008, Garcia was convicted of the above offenses. (Doc. 48-1 at 117-119). Thereafter, on August 5, 2008, Garcia was presented with a prepared Stipulated Request for Order and Waiver of Hearing (the "stipulation"). (Doc. 48-9). The stipulation was written in both English and Spanish and was read to Garcia in Spanish. (*Id.*). Defendant signed the stipulation, acknowledging he understood his procedural rights under the INA, including his rights to appear before an immigration judge, to examine and object to evidence against him, to present witnesses on his own behalf, and to demand that the government prove his removability. (*Id.*). Garcia chose to waive these rights. (*Id.*). He affirmed he (1) understood that signing the stipulation would result in his removal from the United States, (2) accepted such an order of removal, (3) waived any appeal of that order, and (4) accepted his consequences. (*Id.*). Notably, the government

2

representative signed the stipulation, certifying that the content of the stipulation was read to Garcia in a language he understood. (*Id.* at 3, 6).

On August 7, 2008, Homeland Security requested the immigration court to enter an order of removal based on Garcia's stipulation. (Doc. 52-5). The next day, an immigration judge ordered Garcia removed from the United States based on his stipulation. (Docs. 52-6; 48-2). Important here, the immigration judge found Garcia had waived his right to a hearing and had submitted his stipulation voluntarily, knowingly, and intelligently. (Docs. 48-2 at 1; 52-6 at 1). The immigration judge thus found it to be in the best interest of justice to grant Defendant's request for an order of removal. (Docs. 48-2 at 2; 52-6 at 2). In accordance with the judge's decision, Garcia was removed from the United States on August 12, 2008. (Doc. 52-7).

Thereafter, on April 23, 2018, Garcia "was found to be voluntarily in the United States" without "the consent of the Attorney General or the Secretary of Homeland Security." (Doc. 1 at 1). On that same day, Homeland Security executed a Notice of Intent/Decision to Reinstate Garcia's prior removal order. (Doc. 48-3). Subsequently, on May 9, 2018, a federal grand jury in Fort Myers, Florida returned a one-count Indictment against Garcia for illegal reentry into the United States in violation of 8 U.S.C. § 1326(a) and (b)(1). (Doc. 1).

Now, Garcia moves to dismiss his Indictment on two intertwined grounds. First, in relying on *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), he argues that because the NTA he received failed to specify the time and place of his removal hearing, jurisdiction never vested with the immigration court and, therefore, his deportation order is void *ab initio* and cannot serve as the basis for this case. (Doc. 48 at 4-7). Second, he maintains that the

3

lack of a time and location on the NTA rendered his resulting deportation fundamentally unfair and thus subject to a collateral attack under 8 U.S.C. § 1326(d). (*Id.* at 7-12). For the reasons set forth below, the Court finds: (1) the defects in Garcia's NTA did not deprive the immigration court of jurisdiction to order his removal and (2) Defendant's waiver forecloses his collateral attack under 8 U.S.C. §1326(d).

## STANDARD OF REVIEW

An "indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government." Fed. R. Crim. P. 7(c)(1). "An indictment is sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *U.S. v. Steele*, 178 F.3d 1230, 1233-34 (11th Cir. 1999) (internal citation omitted). A "district court [must] dismiss an indictment if the indictment fails to allege facts which constitute a prosecutable offense." *U.S. v. Coia*, 719 F.2d 1120, 1123 (11th Cir. 1983).

## DISCUSSION

Garcia advances two theories in support of dismissing his Indictment. First, he asserts the immigration court did not have subject matter jurisdiction because he received a defective NTA. (Doc. 48 at 4-7). Second, he claims the Indictment should be dismissed per the factors permitting a collateral attack on a deportation order in 8 U.S.C. § 1326(d). (*Id.* at 7-12). Critical to both arguments is the Supreme Court's recent opinion in *Pereira*, 138 S. Ct. 2105. In *Pereira*, the Court considered the following narrow question: "Does a

notice to appear that does not specify the time and place at which the proceedings will be held, as required by 8 U.S.C. § 1229(a)(1)(G)(i), trigger the stop-time rule?" *Id.* at 2110. The Court held that such notices are not true "notices to appear" as defined by 8 U.S.C. § 1229(a)(1). *Pereira*, 138 S. Ct. at 2113-14.

The Court's holding rested primarily on the plain reading of 8 U.S.C. § 1229(a)(1), which requires non-citizens facing removal proceedings to receive a "notice to appear," and defines a "notice to appear" as a "written notice." *Id.* This "written notice" must include, among other things, the "time and place at which the proceedings will be held." *Id.* The Court stated that "common sense compels the conclusion" that if the "three words notice to appear mean anything . . . that must mean that, at a minimum, the Government has to provide noncitizens notice of the information, *i.e.*, the time and place that would enable them to appear at the removal hearing." *Id.* at 2115 (internal quotation marks omitted). At dispute between the parties is whether *Pereira* applies beyond the stop-time rule, where, as is the case here, the underlying notice to appear served upon the non-citizen, fails to specify the time and place of the removal proceedings. In light of *Pereira*, the Court turns to Garcia's arguments, starting with whether the immigration court had subject matter jurisdiction over his removal.

**A. Immigration Court's Subject Matter Jurisdiction Over Garcia's Removal**

Garcia first argues this Court should dismiss his Indictment because he received a defective notice to appear, under *Pereira*, which prevented subject matter jurisdiction from vesting with the immigration court. (*Id.* at 4-7). Garcia maintains that a removal proceeding commences, and subject matter jurisdiction vests with the immigration court, upon the filing of a charging document, such as a notice to appear, which *Pereira* and 8

5

U.S.C. § 1229(a) establish must contain the time and place of removal proceedings. (*Id.*). Garcia argues where a notice to appear fails to include the time and place of removal proceedings, it does not qualify as a charging document that vests jurisdiction with the immigration court. (*Id.*). Furthermore, he states, absent jurisdiction, the immigration court's original removal order is invalid. (*Id.*). The government argues Garcia takes an overly broad view of *Pereira*, which does not suggest that the failure to specify the date and location of removal proceedings voids removal. (Doc. 52 at 7). The Court agrees with the government.

The Supreme Court's holding in *Pereira* solely addressed a **narrow** issue of statutory interpretation: whether a NTA that omitted the time and place of an initial removal hearing triggered the "stop-time" rule. *Pereira*, 138 S. Ct. at 2110. Defendant now asks this Court to extend this narrow ruling and find that an immigration court lacks subjects matter jurisdiction over an illegal alien if the NTA presented fails to state the time and place of the hearing. The Court declines to interpret *Pereira* so broadly, especially since the Supreme Court (1) did not invalidate the alien's underlying removal proceedings and (2) never addressed whether jurisdiction existed in that case. *See Hernandez-Perez v. Whitaker*, 911 F.3d 305, 315 (6th Cir. 2018) (finding it significant that *Pereira* "did not purport to invalidate the alien's underlying removal proceedings or suggest the proceedings should be terminated" and that the Supreme Court "took up, decided, and remanded *Pereira* without even hinting at the possibility of a jurisdictional flaw") (internal citations and quotations omitted); *see also Mauricio-Benitez v. Sessions*, 908 F.3d 144, 148 n.1 (5th Cir. 2018) (noting *Pereira* is to be read narrowly).

Indeed, neither *Pereira* nor 8 U.S.C. § 1229(a) control when and how subject matter jurisdiction over a removal proceeding vests in an immigration court. Rather, federal regulations promulgated by the Attorney General dictate when and how an immigration court gains subject matter jurisdiction. In particular, 8 C.F.R. § 1003.14(a) states that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." Such charging document may include a NTA. *See* 8 C.F.R. § 1003.13.

8 C.F.R. § 1003.15(b)-(c) enumerates particular items that must be included in a NTA. 8 C.F.R. § 1003.15(b) requires that a notice to appear include:

(1) The nature of the proceedings against the alien;

(2) The legal authority under which the proceedings are conducted;

(3) The acts or conduct alleged to be in violation of law;

(4) The charges against the alien and the statutory provisions alleged to have been violated;

(5) Notice that the alien may be represented, at no cost to the government, by counsel or other representative authority to appear pursuant to 8 C.F.R. 12921;

(6) The address of the Immigration Court where the Service will file . . . the Notice to Appear; and

(7) A statement that the alien must advise the Immigration Court having administrative control over the Record of Proceeding of his or her current address and telephone number and a statement that failure to provide such information may result in an absentia hearing in accordance with § 1003.26.

Additionally, 8 C.F.R. § 1003.15(c) requires that a NTA include:

(1) The alien's names and any know aliases;

(2) The alien's address;

(3) The alien's registration number, with any lead alien registration number with which the alien is associated;

(4) The alien's alleged nationality and citizenship; and

(5) The language that the alien understands.

Notably, the time and place of the removal proceedings is not among the above criteria. Finally, 8 C.F.R. § 1003.18(b) states that an NTA must include "the time, place and date of the initial removal hearing, where practicable." Upon review of the above regulations, it is not essential that the date and place of the removal proceedings be included in the NTA for jurisdiction. Instead, this information need only be included "where practicable." *See* 8 C.F.R. § 1003.18(b). Moreover, 8 U.S.C. § 1229(a)(1), and its requirements regarding a NTA, is not mentioned within the above federal regulations to confer subject matter jurisdiction.

Although the regulations mandate what is required in a NTA filed with the immigration court to confer jurisdiction, *Pereira* and 8 U.S.C. § 1229(a)(1) address what information must be included in an NTA "given . . . to the alien" or his counsel. Considering the above, the Court, like other district courts, finds that the regulations, such as 8 C.F.R. §§ 1003.14, 1003.15, and 1003.18, not *Pereira* and 8 U.S.C. § 1229(a)(1), set forth the standard for conferring jurisdiction upon the immigration court. *See United States v. Ramos-Delcid*, No. 3:18-CR-20, 2018 WL 5833081, at *3 (W.D. Va. Nov. 7, 2018); *United States v. Saravia-Chavez*, No. 3:18-CR-00016, 2018 WL 5974302, at *4 (W.D. Va. Nov. 14, 2018); *United States v. Cortez*, No. 6:18-CR-22, 2018 WL 6004689,

at *3 (W.D. Va. Nov. 15, 2018); *United States v. Romero-Caceres,* No. 1:18-CR-354, 2018 WL 6059381, at *7 (E.D. Va. Nov. 19, 2018); *United States v. Torres-Medina,* No. 5:17-CR-281-1H, 2018 WL 6345350, at *4 (E.D. N.C. Dec. 4, 2018); *United States v. Duarte,* No. 4:18CR3083, 2018 WL 6493090, at *4 (D. Neb. Nov. 30, 2018), report and recommendation adopted, No. 4:18CR3083, 2018 WL 6492750 (D. Neb. Dec. 10, 2018); *United States v. Rivera Lopez*, No. 1:18-CR-00381, 2018 WL 6834363, at *5 (E.D. Va. Dec. 28, 2018); *United States v. Gonzalez-Leal*, No. 5:18-CR-275-FL-1, 2019 WL 310145, at *4 (E.D. N.C. Jan. 3, 2019), report and recommendation adopted, No. 5:18-CR-275-FL-1, 2019 WL 302495 (E.D. N.C. Jan. 22, 2019).

Turning to this case, Garcia does not allege that the NTA filed with the immigration court failed to satisfy 8 C.F.R. §§ 1003.15(b) and (c) and 1003.18(b). Consequently, Garcia's motion to dismiss the Indictment is denied to the extent that it is based on the immigration court's lack of subject matter jurisdiction over his removal proceedings.

**B. Garcia's Collateral Attack Under 8 U.S.C. § 1326(d)**

Intertwined with Defendant's jurisdictional argument is his collateral attack under 8 U.S.C. § 1326(d). Again, relying on *Pereira*, Garcia argues that because his NTA did not include a hearing place and time, his resulting deportation is defective. (Doc. 48 at 4-12). The government asserts Defendant has failed to satisfy all three requirements to set forth a collateral attack and thus his motion is due to be denied. (Doc. 52 at 8-12). The Court agrees with the government.

A defendant may collaterally attack his deportation order where his order is necessary to establish an element of the charged illegal reentry offense. *See United States v. Mendoza-Lopez*, 481 U.S. 828, 837–38 (1987) (review of deportation

proceeding must be "made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense"). Under 8 U.S.C. § 1326(d), a defendant bringing a collateral attack against an underlying deportation order must show (1) he "exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings "at which the order was issued improperly deprived" him of the "opportunity for judicial review; and (3) the entry of the order was "fundamentally unfair." The Court addresses each argument below, starting with whether Defendant has exhausted his administrative remedies.

First, Defendant argues he should be excused from exhausting his administrative remedies because (1) his original removal order is void *ab initio* under *Pereira* and (2) he unknowingly and unintelligently waived his right to appeal. (Doc. 48 at 7-9). In the alternative, he argues he has "done all within his capacity to exhaust his administrative remedies" by filing a motion to reopen with the immigration court and appealing its denial. (*Id.* at 9-10). The government maintains Garcia has not exhausted his administrative remedies because he did not contest the jurisdiction of the immigration judge based upon defects in his NTA. (Doc. 52 at 8).

For starters, the Court has already rejected Garcia's argument that his removal order is void *ab initio* under Pereira. Thus, he is not excused on this ground. Next, he argues he is excused because he unknowingly and unintelligently waived his right to appeal because (1) he never had a hearing before an immigration judge during his initial detention; (2) he was coerced into executing his stipulation, which he did not have the capacity to understand; (3) deportation officials told him he could not apply for a

10

cancellation of removal under INA § 240A(b); and (4) he was never informed of his rights for relief. (Doc. 48 at 8-9). The Court is not persuaded.

Unlike what Garcia asserts, the evidence shows he knowingly and intelligently waived his right to a hearing and appeal and stipulated to his own removal. First, regarding his initial waiver of a hearing before an immigration court, the record reveals that an immigration officer read Garcia's Notice of Rights and Request for Disposition form in both English and Spanish. (Doc. 52-3). Moreover, Defendant signed and dated both translations of the form. (*Id.*). Defendant neither presents any evidence that he did not understand the form, nor the rights he was waiving. Next, the evidence shows Garcia knowingly and intelligently entered his stipulation of removal. Not only was the stipulation written in both English and Spanish, but Defendant signed and dated both translations of the stipulation and pressed a stamp of his thumbprint where he affixed both signatures. (Doc. 48-9). Additionally, as stated above, the government representative certified that the content of the stipulation was explained to Garcia in a language he understood. (*Id. at 3*, 6). Taking the above into consideration, the immigration judge found that Garcia waived his right to a hearing and executed his stipulation voluntarily, knowingly, and intelligently. (Doc. 48-2 at 1). Besides Garcia's own self-serving statements, he presents no credible evidence that the stipulation or his waiver, statements, or admissions were unknowing, involuntary, or unintelligent. Defendant thus fails to show he is excused from exhausting his administrative remedies.

In any case, Garcia fails to show he exhausted his administrative remedies for two reasons. First, he never challenged the jurisdiction of the immigration court based upon the lack of time and place in the initial notice. *See United States v. Rosa Imelda Garcia-*

cancellation of removal under INA § 240A(b); and (4) he was never informed of his rights for relief. (Doc. 48 at 8-9). The Court is not persuaded.

Unlike what Garcia asserts, the evidence shows he knowingly and intelligently waived his right to a hearing and appeal and stipulated to his own removal. First, regarding his initial waiver of a hearing before an immigration court, the record reveals that an immigration officer read Garcia's Notice of Rights and Request for Disposition form in both English and Spanish. (Doc. 52-3). Moreover, Defendant signed and dated both translations of the form. (*Id.*). Defendant neither presents any evidence that he did not understand the form, nor the rights he was waiving. Next, the evidence shows Garcia knowingly and intelligently entered his stipulation of removal. Not only was the stipulation written in both English and Spanish, but Defendant signed and dated both translations of the stipulation and pressed a stamp of his thumbprint where he affixed both signatures. (Doc. 48-9). Additionally, as stated above, the government representative certified that the content of the stipulation was explained to Garcia in a language he understood. (*Id. at 3*, 6). Taking the above into consideration, the immigration judge found that Garcia waived his right to a hearing and executed his stipulation voluntarily, knowingly, and intelligently. (Doc. 48-2 at 1). Besides Garcia's own self-serving statements, he presents no credible evidence that the stipulation or his waiver, statements, or admissions were unknowing, involuntary, or unintelligent. Defendant thus fails to show he is excused from exhausting his administrative remedies.

In any case, Garcia fails to show he exhausted his administrative remedies for two reasons. First, he never challenged the jurisdiction of the immigration court based upon the lack of time and place in the initial notice. *See United States v. Rosa Imelda Garcia-*

*Alvarez*, No. 2:18-cr-142-FtM-29CM (M.D. Fla. Oct. 30, 2018) (citing *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1093 (6th Cir. 1981); *United States Transp. Union v. Surface Transp. Bd.*, 114 F.3d 1242, 1244-45 (D.C. Cir. 1997); *Campos-Luna v. Lynch*, 643 F. App'x 540, 543 (6th Cir. 2016)). Second, as the Court found above, he knowingly and voluntarily waived his right to appeal. *See United States v. Tamayo-Baez*, 820 F.3d 308, 313 (8th Cir. 2016) ("If an alien knowingly and voluntarily waives his right to appeal an order of deportation, then his failure to exhaust administrative remedies will bar collateral attack on the order in a subsequent illegal reentry prosecution under 1326(d)(1).") (quoting *United States v. Cerna*, 603 F.3d 32, 39 (2d Cir. 2010)); *see also United States v. Chavez-Alonso*, 431 F.3d 726, 728 (10th Cir. 2005)). Defendant has therefore failed to prove the first required element for collaterally attacking his immigration order.

Next, Defendant argues he was deprived of an opportunity for judicial review because (1) he was coerced into executing a stipulation for removal he could not read or comprehend; (2) deportation officials told him he could not apply for relief from removal; and (3) he never saw the inside of an immigration courtroom and was never advised as to his rights. (Doc. 48 at 10). Again, the Court is not persuaded by Garcia's incredible, self-serving statements. "Where the defendant affirmatively waives the right to a hearing and the right to seek review of a deportation order . . . he cannot thereafter claim the government's actions denied his opportunity for judicial review[.]" *Duarte*, 2018 WL 6493090, at *5 report and recommendation adopted, 2018 WL 6492750; *see also Rivera Lopez*, 2018 WL 6834363, at *8 (holding defendant was not denied an opportunity for judicial review when he knowingly and voluntarily signed a stipulation to removal) (citing *United States v. Lira-Ramirez*, No. 18-cr-10102, 2018 WL 5013523, at *4-7 (D. Kan. Oct.

15, 2018); *United States v. Mendoza-Sanchez*, No. 17-cr-00189, 2018 WL 5816346, at *3 (D.N.H. Nov. 5, 2018)). Thus, Defendant has failed to prove the second required element in order to set forth a collateral attack.

Lastly, Defendant maintains the entry of his removal order was fundamentally unfair because (1) but for his involuntary and uninformed stipulation, he could have applied for cancellation of removal, withholding of removal, or protection from removal and (2) jurisdiction did not vest with the immigration court, under *Pereira*, and thus his removal was void *ab initio*. The Court, however, has already rejected both arguments.

"[F]undamental unfairness requires a showing that specific errors prejudiced the defendant. The prejudice need not rise to the level of showing that the defendant would not have been deported, but rather that the errors might have affected the outcome of the hearing." *United States v. Holland*, 876 F.2d 1533, 1536 (11th Cir. 1989) (citations omitted). As the Court stated previously, the evidence shows Garcia executed his stipulation of removal and waiver of a hearing and appeal knowingly, voluntarily, and intelligently. He has not provided any evidence to show otherwise. Based on the evidence before the Court, Garcia was afforded the right to a full and fair hearing regarding his removal, yet he turned it down. As a result, by knowingly, voluntarily, and intelligently stipulating that he was removable and affirmatively waiving his right to seek relief from removal, Garcia now cannot show his waiver offended due process. *See Rivera Lopez*, 2018 WL 6834363, *8; *see also Duarte,* 2018 WL 6493090, *6. And, important here, no prejudice resulted from any alleged lack of notice because Defendant expressly waived his right to a hearing. Consequently, he has failed to satisfy the third requirement in order to collaterally attack his removal.

In short, the Court finds the Indictment states all elements of the charge of illegal reentry in violation of 8 U.S.C. §§ 1326(a) and (b)(1) and Garcia's collateral attack must be denied.

Accordingly, it is now

**ORDERED:**

Defendant Juan Carlos Alfaro Garcia's Motion to Dismiss the Indictment Pursuant to 8 U.S.C. § 1326(d) and Request for Evidentiary Hearing (Doc. 48) is **DENIED**. The Defendant remains set for Status Conference before the Undersigned on **February 12, 2019.**

**DONE AND ORDERED** at Fort Myers, Florida, this January 31, 2019.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record